# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE ROJAS-LARA, | Case No. 2:25-cv-02544-RFB-EJY |
| Petitioner, | **ORDER** |
| v. | |
| THE UNITED STATES OF AMERICA, *et al*., | |
| Respondents. | |

Before the Court is Petitioner Jose Rojas-Lara's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada Southern Detention Center (NSDC) in the custody of the Federal Respondents. For the following reasons, the Court grants the Writ and orders Respondents to provide Petitioner with a bond hearing by January 27, 2026 or immediately release him from detention.

## I. BACKGROUND

### A. Legal Background

The following legal framework under the Immigration and Nationality Act (INA) is relevant to Petitioner's challenge to the lawfulness of his ongoing detention.

#### 1. Statutory Framework

##### i. *Removal Proceedings Under §1229(a) and Detention Under § 1226*

Removal proceedings under 8 U.S.C. § 1229(a), the "usual removal process," involve an evidentiary hearing before an immigration judge (IJ). Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Section § 1226 of the INA provides that while removal proceedings are pending, a noncitizen "on a warrant," "may be arrested and detained" and that the government

"may release the alien on bond . . . or conditional parole." 8 U.S.C. § 1226(a)(2); accord Thuraissigiam, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country").

"Section 1226 generally governs the process of arresting and detaining ... [noncitizens] already in the country pending the outcome of removal proceedings," including noncitizens who are "present in the country" despite being "inadmissible at the time of entry." Jennings v. Rodriguez, 583 U.S. 281, 288-89 (2018). "[O]nce inside the United States . . . the default rule" is set forth in § 1226(a): "The Attorney General may issue a warrant for the arrest and detention of [a noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" Id. at 288 (quoting § 1226(a)). Following the noncitizen's arrest, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole." § 1226(a)(1)-(2).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or her release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

Upon a decision regarding removability by an IJ, either the noncitizen or the government may appeal the IJ's decision to the Board of Immigration Appeals (BIA). 8 C.F.R. §§ 124.15, 1003.1. If the BIA upholds a removal order, the noncitizen may then appeal that decision to a U.S. court of appeals. 8 U.S.C. § 1252.

### ii. *Expedited Removal and Mandatory Detention Under § 1225*

While "§ 1226 applies to aliens already present in the United States," the INA also "authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)." Jennings, 583 U.S. at 303 (emphasis added). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1).

For certain applicants for admission, § 1225 authorizes "expedited removal." Id., § 1225(b)(1). Under § 1225(b)(1), titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," an inspecting immigration officer is required to place an applicant for admission in expedited removal proceedings if the officer determines that the applicant is inadmissible due to fraud, misrepresentation, or lack of valid entry documents. Id., § 1225(b)(1)(A)(i) (citing id. §§ 1182(a)(6)(C), (a)(7)). Upon designation, the Secretary of Homeland Security may extend the category of applicants for admission who are subject to expedited removal to noncitizens who have not been admitted or paroled and who have not been physically present in the United States for at least two years. Id., § 1225(b)(1)(A)(iii). Applicants for admission who are subject to expedited removal proceedings are removed from the country "without further hearing or review" unless the applicant indicates either an intention to apply for asylum or a fear of persecution. Id., § 1225(b)(1)(A)(i).  If an applicant does indicate such an intention or fear, the applicant "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id., § 1225(b)(1)(B)(iii)(IV).

In expedited removal, if a noncitizen asserts an intention to apply for asylum or a fear of prosecution, the inspecting immigration officer must refer them for a "credible fear interview," to be conducted by an asylum officer. 8 C.F.R. § 235.3(b)(4). If that asylum officer finds the noncitizen to have a credible fear of persecution, the noncitizen will be moved either to standard removal proceedings under 8 U.S.C. § 1229(a) as described above or referred to U.S. Citizenship and Immigration Services (USCIS) for administrative asylum proceedings. Id., § 208.30(f). If, however, the officer makes a negative credible fear determination, a supervisory officer will review the determination. Id., § 208.30(e)(8). And if the supervisor agrees, the noncitizen may request review of the decision by an IJ. Id., § 208.30(g).

In reviewing the Department of Homeland Security (DHS) determination that a noncitizen in expedited removal proceedings lacks a credible fear, an IJ considers evidence regarding the noncitizen's fear of returning to their country of origin and if the IJ finds the noncitizen has demonstrated a significant possibility that they could establish eligibility for asylum and/or

protection from removal, the IJ will vacate the expedited removal order and return the case to DHS for further proceedings or for standard removal proceedings. See 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(B).

Section 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). Jennings, 583 U.S. at 287. This provision, § 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, noncitizens subject to § 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their standard removal proceedings under § 1229(a) are pending. This contrasts with the default detention regime under § 1226(a) discussed above, which allows for discretionary release and review of detention through a bond hearing.

### 1. Parole

As relevant here, ICE/DHS may choose to release a noncitizen seeking entry and subject to detention and removal under § 1225 on parole, on a discretionary and case-by-case basis. See 8 U.S.C. § 1182(d)(5)(A). Accordingly, a noncitizen who has been detained at the border may be paroled for humanitarian reasons, or to provide a significant public benefit. Id. Parole under that section "shall not be regarded as an admission" of the noncitizen, and "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id. Section 1182(d)(5)(A)'s implementing regulations provide termination of parole is automatic "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). However, where parole is automatically revoked, a noncitizen "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time," or remain in detention if, in the opinion of a DHS official, "the public interest requires that the alien be continued in custody." Id., § 212.5(e)(2)(i).

- 4 -

**B. Petitioner Rojas-Lara**

Petitioner Rojas-Lara is a citizen of El Salvador who entered the United States on September 2, 2022. See ECF No 22-1. He presented himself for inspection by a Customs and Border Protection (CBP) agent at the San Ysidro, California designated port of entry and requested political asylum for himself and his family. Id. On September 4, 2022, he was transferred into DHS custody for expedited removal proceedings, pending a credible fear interview with an asylum officer. Id. After receiving a negative credible fear determination by DHS, Petitioner sought review of that determination before an IJ. See ECF No. 21-2. On November 22, 2022, the IJ considered testimony and documentary evidence regarding Petitioner's background and fear of returning to El Salvador and found that Petitioner had demonstrated a significant possibility that he could establish eligibility for asylum, withholding of removal, and protection under the Convention Against Torture. See id. Specifically, the IJ found Petitioner could face detention, physical harm, and death by the Salvadorian police because he is a suspected gang member. Id. Accordingly, the IJ vacated the expedited removal order and returned the case to DHS for further proceedings or standard removal proceedings. Id.

On December 20, 2022, ICE decided to parole Petitioner from custody under 8 U.S.C. § 1182(d)(5)(A) for a period of one year. See ECF No. 16-2. Terms and conditions for his release on parole included, *inter alia*, that he must notify ICE and the immigration court of any address correction or address change, report for all scheduled hearings before the immigration court and every appointment as directed by ICE, and must not violate any local, State or Federal laws or ordinances. Id. Petitioner complied with the terms of his parole until it automatically expired after one year in December of 2023. From December 2022 until his most recent arrest and detention in July 2025, Petitioner settled in Las Vegas with his wife and children and developed deep ties to the community. See ECF No. 1-1; ECF No. 23 at 2. He was gainfully employed as a landscaper since 2024, and his employer sent a letter of support to the immigration court in support of his release on bond, stating that he was a very good worker and never missed any days. See ECF No. 1-3. His friends, family, and coworkers describe him as a kind, responsible, hardworking, and essential member of the community. Id. Until July of 2025, he had no further interactions with

immigration officials and maintained a clean criminal record. See ECF No. 16-1.

According to the arresting ICE officers' narrative of their encounters with Petitioner, they targeted Petitioner for surveillance based on immigration record checks and his "NCIC record" which Respondents contend identifies him as a suspected member of MS-13. ECF No. 16-1. They have provided no evidence supporting this contention.

On July 23, 2025, federal officers observed Petitioner exit his home in a vehicle registered to him and performed a vehicle stop at a nearby intersection. Id. An ICE Officer advised Petitioner that a warrant for his arrest had been issued, placed him in handcuffs, and transported him to the Las Vegas ICE field office for processing. Id. The arrest warrant was issued pursuant to 8 U.S.C. § 1226. See ECF No. 25-1. The same day DHS commenced standard removal proceedings against Petitioner by issuing a Notice to Appear (NTA) before the Las Vegas Immigration Court. See ECF No. 16-3. The NTA categorizes Petitioner as an "arriving alien" and alleges that he is inadmissible because he lacks a valid entry document required by the INA. Id. (referring to the inadmissibility ground under 8 U.S.C. § 1182(a)(7)[1]).

While in immigration detention at the Nevada Southern Detention Center (NSDC), Petitioner sought a bound hearing under 8 U.S.C. § 1226(a), but on August 26, 2025, the IJ denied bond based on lack of jurisdiction because Petitioner was charged as an "arriving alien" under § 1225(b). See ECF No. 16-4 at 2. It does not appear from the record that the IJ was aware of or considered the fact that Petitioner was arrested pursuant to a warrant under 8 U.S.C. § 1226. See id.

On October 6, 2025, Petitioner filed an I-598 application for asylum and withholding of removal. On November 26, 2025, an IJ issued an oral decision ordering Petitioner removed to Honduras, finding that his "I-589 application was pretermitted as he is subject to the Asylum Cooperation Agreement with Honduras." See ECF No. 21-1. Petitioner timely appealed the removal order to the BIA, and that appeal remains pending. See ECF No. 1-1.

---

[1] A noncitizen is inadmissible under the INA and therefore removable if at "the particular point in time when [they] submit[ ] an application to physically enter into the United States" they are not in possession of valid entry documents. See generally Torres v. Barr, 976 F.3d 918 (9th Cir. 2020) (interpreting 8 U.S.C. § 1182(a)(7)).

Petitioner's detention is causing severe hardship to his family. See id. at ¶ 68-72. Prior to his detention he was the primary breadwinner and head of his household, and his absence has plunged his family into economic crisis, such that they face looming eviction and struggle to meet their most basic needs. Id. His detention is causing his minor children serious emotional, mental, and educational harm as they struggle to sleep, eat regularly, and perform in school during their father's absence. Id.

## II.      PROCEDURAL HISTORY

On December 19, 2025, Petitioner, proceeding pro se, filed a Motion for Leave to Proceed In Forma Pauperis (IFP), a Petition for Writ of Habeas Corpus pursuant to 8 U.S.C. § 2241, and a Motion for Appointment of Counsel. See ECF Nos. 1-3. On December 22, 2025, the Court granted the IFP application, appointed the Federal Public Defender as counsel, and ordered Respondents to show cause why the Petition should not be granted. See ECF No. 6. The Court further ordered Respondents to file with their Return certain documents in their possession regarding Petitioner's arrest, detention, and removal proceedings, based on its finding that Petitioner had established a prima facie case for entitlement to habeas relief in the form of a bond hearing. Id. at 2-3.

On January 6, 2026, Respondents filed their Return which attached some, but not all, of the documents referenced and relied upon in the Return. See ECF No. 16. On January 12, 2026, Respondent John Mattos filed a joinder to the Return. ECF No. 17. On January 13, 2026, the Court ordered Respondents to supplement their Return with additional documents in their possession, ECF No. 19, and they did so on January 15, 2026, see ECF No. 21, and January 16, 2026, see ECF No. 22. On January 16, 2026, Petitioner filed his traverse. See ECF No. 23.

On January 20, 2026, upon further review of the record the Court noted that the July 23, 2025 DHS Form I-212 "Record of Deportable/Inadmissible Alien" produced by Respondents as to Petitioner stated that Petitioner was arrested pursuant to a "warrant for arrest of alien" that had been issued for him, and that Respondents had failed to produce that warrant despite being ordered to do so. See ECF No. 24. The Court therefore ordered Respondents to supplement their Return

with a copy of the warrant. Id. On January 21, 2026, Respondents supplemented their Return with the July 23, 2025 arrest warrant, which was issued pursuant to 8 U.S.C. § 1226. See ECF No. 25-1. The Court's Order on the Petition follows.

### III.    LEGAL STANDARD

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Accordingly, this Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either grant the writ or order respondent(s) to show cause why the writ should not be granted—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken at face value. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). "Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the

- 8 -

necessary facilities and procedures for an adequate inquiry." Harris, 394 U.S. at 300. Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true unless they are contradicted by relevant evidence. See Carlson, 186 F.2d at 188. Importantly, however, a detained habeas petitioner should "not be burdened by the impossible task of imagining and refuting [the] causes" of his detention. Id. As the Supreme Court "has emphasized, taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, that a habeas corpus proceeding must not be allowed to founder in a 'procedural morass.'" Harris, 394 U.S. at 291–92 (citation omitted).

## II.    DISCUSSION

### A.  Petitioner is Not Subject to Detention Under 8 U.S.C. § 1231

Respondents devote the majority of their Return to a discussion of the government's authority to detain a noncitizen after a final order of removal has been issued under 8 U.S.C. § 1231, and assert that Petitioner's due process challenge to his ongoing detention fails because he has been detained for less than six months since the IJ's November 26, 2025 removal order, and therefore his detention is presumptively reasonable under Zadvydas v. Davis, 533 U.S. 678, 690 (2001). See ECF No. 16 at 6-8. However, because Petitioner timely appealed the IJ's November 26, 2025 removal order, and that appeal remains pending before the BIA, he is not subject to a final order of removal and  is not detained under § 1231, but rather, is being detained "pending a decision" on his removability, which encompasses both the period of administrative review of his appeal by the BIA, and, if applicable, the period of judicial review of the BIA's decision by the Ninth Circuit. See Avilez v. Garland, 69 F.4th 525, 536-538 (9th Cir. 2023) (citations omitted).

Accordingly, the Court turns to the question of whether Petitioner is properly detained under § 1225 or § 1226 pending the conclusion of his removal proceedings, and whether his detention without the opportunity for release on bond violates the Due Process Clause of the Fifth Amendment.

///

### B.  Whether Petitioner is Properly Detained Under § 1225 or § 1226

Respondents assert that Petitioner is detained under § 1225(b) of the INA pursuant to Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025), because he is properly classified as an "arriving alien" as the IJ found in denying Petitioner a bond hearing for lack of jurisdiction.[2] Under Matter of Q. Li, because Petitioner is in full removal proceedings rather than expedited removal, he would be detained under § 1225(b)(2)(A) during the pendency of his current removal proceedings. 29 I&N Dec. at 69-70.

As an initial matter, contrary to Respondents arguments, the record here indicates that Petitioner was arrested and detained under § 1226, not § 1225, because he was arrested by ICE agents pursuant to a warrant issued under § 1226, and § 1225 applies to noncitizens arrested *without a warrant.* See id. The fact that Petitioner was arrested pursuant to a warrant under § 1226, after residing in the country for nearly two years after the automatic expiration of his parole in December 2023, establishes that his circumstances fall under the plain text of § 1226. See 8 U.S.C. § 1226(a) ("On a warrant . . . an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). Indeed, Respondents arguments do not appear to even acknowledge the existence of the arrest warrant indicating that the arrest was pursuant to § 1226, even though they had the warrant in their possession, and produced it after filing their Return.

The Court further finds persuasive and incorporates by reference the reasoning and finding of the U.S. District Court of the District of Columbia in Coal. for Humane Immigrant Rts. v. Noem, --- F.Supp.3d ---, No. 25-CV-872 (JMC), 2025 WL 2192986, at *27-30 (D.D.C. Aug. 1, 2025) ("CHIR"). In CHIR, the court extensively analyzed the statutory term "arriving" as referred to in § 1225(b) according to its plain meaning, its context within the rest of the statute, and the relevant legislative history and purpose, and found that a noncitizen paroled into the United States cannot

---

[2] Respondents also assert the Court should deny the Petition due to Petitioner's failure to exhaust his administrative remedies by appealing the IJ's finding that he was ineligible for bond to the BIA. However, as discussed below, had Petitioner appealed that decision, the BIA would have applied its decision in Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025), and affirmed the IJ's decision. Therefore, administrative exhaustion is excused as futile. See Laing v. Ashcroft, 379 F.3d 994, 1000 (9th Cir. 2004).

be perpetually classified as an "arriving alien" regardless of how long they have been physically present in the United States. Id.

Likewise, as this Court has previously found, the fact that Petitioner was arrested in Las Vegas by ICE officers conducting removal operations after he had resided in the country for well over two years demonstrates that § 1225(b)(2)(A) does not apply to him. See Escobar Salgado v. Mattos, --- F. Supp. 3d. ---, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *14 (D. Nev. Nov. 17, 2025) ("[t]he notion that an ICE officer conducting removal operations within the continental United States, far from any port of entry, is engaging in 'Inspection of Applicants for Admission' as contemplated in § 1225(b) contradicts the plain meaning of the text when placed in context of the overall Section and its headings."). The fact that Petitioner was paroled into the country and remained in supervised release for nearly two years after his parole automatically terminated, and in that period he established familial, financial, and community ties in Las Vegas, demonstrates that he is no longer "arriving" in the country as defined by the INA, and "[t]his distinction is critical because 'aliens who have established connections in this country' have greater due process rights than 'an alien at the threshold of initial entry.'" Id. at *16 (quoting Thuraissigiam, 591 U.S. 103, 107 (2020). Accordingly, the Court finds that Respondents continued detention of Petitioner under § 1225(b) is unlawful and that Petitioner is entitled to a bond hearing under § 1226(a) and its implementing regulations.

**C. Due Process**

The Court further finds Respondents ongoing detention of Petitioner without the opportunity for release on bond violates his procedural due process rights under the Fifth Amendment.

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend V; see also Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. There is no question these protections extend to noncitizens present in the U.S. like Petitioner. See id. at 693 ("[T]he

- 11 -

Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). As the Ninth Circuit stated in considering a constitutional challenge to mandatory detention under § 1225(b), "[w]e have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government." Rodriguez v. Marin, 909 F.3d 252, 256-57 (9th Cir. 2018).

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (Applying the Mathews test to a procedural due process challenge to detention under § 1226(a) of the INA and finding that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."). The Mathews test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. The Court finds each of these three factors weigh in favor of Petitioner's claim that he is constitutionally entitled to a bond hearing.

First, the Court finds the private interest affected is Petitioner's liberty interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). Importantly, Petitioner's liberty interest is heightened where he was paroled into the country and abided by the conditions of his parole and supervised release. Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates "an implicit promise" that they will be re-detained only if they violate the conditions of his

release. Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Parole, as a form of conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." Id. The liberty of a noncitizen released pending removal proceedings, "although indeterminate, includes many of the core values of unqualified liberty[.]" Id. Paroled noncitizens "can be gainfully employed and [are] free to be with family and friends and to form the other enduring attachments of normal life." Id. The termination of that liberty "inflicts a 'grievous loss'" both on Petitioner and his loved ones. Id. Accordingly, Petitioner's liberty interest in remaining free from detention thus weighs heavily in his favor. See, e.g., Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.") (collecting cases).

The next Mathews factor, the risk of erroneous deprivation, is extraordinarily high where Petitioner is being detained pursuant to an unsubstantiated assertion by the government that he is a suspected member of MS-13 without any meaningful notice or a hearing. With regards to the automatic expiration of Petitioner's parole under 8 U.S.C. § 1182(d)(5)(A), pursuant to regulation, if a noncitizen in Petitioner's position cannot be excluded, deported, or removed "within a reasonable time," the noncitizen "shall again be released on parole unless in the opinion of the [immigration] official . . . the public interest requires that the alien be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Yet there is no mechanism for Petitioner to challenge the government's decision to return him to custody by ensuring, for example, that DHS has decided and has a reasonable basis for deciding that the public interest requires his continued detention. Moreover, if DHS made a mistake as to facts erroneously applied to Petitioner as a predicate for re-detaining him, there is no mechanism for knowing and challenging the basis of that decision. This is illustrated by the fact that DHS apparently presumes that Petitioner is a suspected member of MS-13 when the decision of an IJ in 2022 indicates he is potentially eligible for asylum because the Salvadorian police *wrongly believe* he is a gang member. See ECF No. 21-2 at 2-3. Moreover, if the government had a legitimate reason to believe Petitioner is a member of MS-13, it likely would not have paroled him into the country in December 2022. Yet Petitioner has no recourse under

current procedures to know the basis for DHS' assertion that he is a suspected member of MS-13 nor opportunity to be heard to challenge that assertion as erroneous.

As to the probable value of additional procedure, it is not difficult to conclude that additional procedure is valuable where the only procedure required for the deprivation of Petitioner's liberty appears to be an unreviewable decision by DHS to target, arrest, and detain Petitioner throughout the indefinite period of his removal proceedings, subject to no formal procedures or review. The additional procedures afforded under § 1226(a), including an individualized, constitutionally adequate custody redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. A decision by an IJ to deny bond can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

The third and final Mathews factor considers the government's countervailing interest in detaining Petitioner and the administrative and fiscal burden of providing a bond hearing. Civil immigration detention is permissible only to prevent flight or protect against danger to the community, see Zadvydas, 533 U.S. at 690, but the government has provided no evidence—including in the proceedings before this Court—that Petitioner's ongoing detention serves either purpose. The government "has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration

- 14 -

proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. The government's legitimate interests are in fact served by the individualized determination by an IJ, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. Again, if the government has a legitimate interest in detaining Petitioner, it need only present evidence substantiating that interest before an IJ.

Nor can the government suggest that the cost of providing a bond hearing to Petitioner would be fiscally or administratively onerous. "In immigration court, custody hearings are routine and impose a minimal cost." Singh v. Andrews, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025). Indeed, it is likely that the cost to the government of continuing to detain Petitioner pending removal proceedings would significantly exceed the cost of providing him with a bond hearing wherein he may very well establish that his continued detention is not warranted. See Hernandez, 872 F.3d at 996 (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In conclusion, the Court finds that all three Mathews factors weigh in favor of Petitioner, and that his continued detention without a bond hearing violates his due process rights.

### D. Scope of Relief

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

Here, Petitioner faces the specific harm of being detained without a constitutionally adequate bond hearing pursuant to § 1226(a) for nearly six months. The Court finds that harm is remedied by ordering a bond hearing be conducted by **January 27, 2026**. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released unless and until it is determined that his detention is warranted under 8

U.S.C. § 1226(a).

### IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **January 27, 2026**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Thus, if bond is granted, the Court **ENJOINS** Respondents from invoking the automatic stay to continue Petitioner's detention, as the Court has already found the automatic stay unconstitutional and adopts that finding here. See Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sept. 5, 2025).

If bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner. The Court has received notice of the hardship other habeas petitioners have faced in their efforts to satisfy monetary bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded until **February 26, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **January 27, 2026**, Petitioner must be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a joint status report by **January 28, 2026**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial. If the bond hearing did not occur by **January 27, 2026**, the status report must certify that Petitioner was released from detention in compliance with this Order.

///

///

///

- 16 -

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter judgment and close this case.

**DATED:** January 22, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**